UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA

DR. KRISTEN KILGORE DDS, JORDAN MIMS
AND ANTWINE LOVE

             CASE NO.:

    Plaintiffs,

v.

UNIVERSITY DENTAL ASSOCIATES; RS AGUERO
HUGHES & ASSOCIATES P.A.; SCOTT F. TUCKER, DDS P.A.

    Defendants.

## PLAINTIFFS' COMPLAINT

COME NOW, Plaintiffs KRISTEN KILGORE, JORDAN MIMS and ANTWINE LOVE, through their undersigned counsel, and hereby file this Complaint against the above captioned Defendants as follows:

## NATURE OF CASE

1. This is an action for relief from violations of Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981"). and seeks damages to redress the injuries Plaintiffs suffered as a result of being exposed to hostile work environment, race discrimination, retaliation, and an unlawful constructive termination.

2. This action is to redress Defendants' unlawful employment practices against Plaintiffs, including Defendants' unlawful discrimination against Plaintiffs with regards to their employment on the basis of race and color, hostile work environment predicated on racial

1

discrimination, employer retaliation as a result of Plaintiffs' opposition to unlawful discrimination, and Defendants' actions, which led to the constructive discharge of Plaintiff Mims on the basis of his race and opposition to unlawful race discrimination.

## JURISDICTION AND VENUE

3. This is an action for monetary damages and injunctive relief pursuant to 42 U.S.C. § 1981 ("Section 1981").

4. This Court has jurisdiction of the claims herein pursuant to 28 U.S.C. §§ 1331 and 1343, as this action involves federal questions regarding deprivation of Plaintiffs' civil rights under 42 U.S.C. § 1981.

5. Venue is proper in this district pursuant to 28 U.S.C. §1391(b) because Defendants were located in this judicial district, and a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein occurred in this district.

## PARTIES

6. Plaintiffs KRISTEN KILGORE and ANTWINE LOVE are both females of the African-American race. Plaintiff JORDAN MIMS is a male of the African-American race.

7. At all times relevant to this Complaint, Plaintiff Kilgore was employed by Defendants as an oral surgeon. Plaintiffs Love and Mims hold and/or have held various positions with Defendants, including as Practice Managers.

8. On information and belief, Plaintiffs allege that Defendants UNIVERSITY DENTAL ASSOCIATES ("UDA") is a for-profit corporation owned by (i) a North Carolina Professional Association, Defendant RS AGUERO HUGHES & ASSOCIATES P.A.,

and (ii) Defendant Scott F. Tucker DDS P.A. Defendants will sometimes be collectively referred to herein as "UDA"

9. At all material times, UDA operated dental facilities located in various parts of North Carolina and other states, including two in Charlotte North Carolina, designated herein as the University 2 and Mallard Creek offices.

10. UDA Senior Operations management consists of Phyllis Jaworski and Angela Bingham (sometimes hereinafter referred to as "management personnel"), both Caucasian females and residents of North Carolina.

11. At all material times, Jaworski and Bingham controlled many of the tangible aspects of Plaintiffs' job duties, including holding the power to control how Plaintiff Kilgore could perform her oral surgery procedures and the everyday working conditions of the UDA operations in western North Carolina.

12. At all times relevant to this Complaint, UDA meets the definition of an "employer" under all applicable state and local statutes.

## STATEMENT OF FACTS

13. Plaintiffs are three (3) individuals of the African-American race, and thus are members of a class of persons protected from discrimination in their employment under 42 U.S.C § 1981.

14. In or around March 2018, UDA hired Plaintiff Kilgore as an oral surgeon. Plaintiff Love was hired in 2019 as a Patient Service Representative and served initially in a training function. Plaintiff Love holds a college degree in Health Administration and has over 25 years of experience in the healthcare industry. Plaintiff Mims was hired as a Practice Manager in June 2021.

15. Plaintiff Kilgore's job duties included performing complex dental procedures such as dental implants, wisdom teeth removal and many other procedures requiring general anesthesia. Dr. David Lesansky, UDA's Vice President of Clinical Care for North Carolina, occupies the position of overall manager for all North Carolina operations in Raleigh and Charlotte.

16. At all material times, UDA, Jaworski and Bingham treated Plaintiffs differently from the manner in which they treated Caucasian employees and other non-African- Americans.

17. Throughout Plaintiffs' employment at UDA, Plaintiffs were subjected to multiple events of degradation, humiliation, and disparate treatment on account of their race. Random comments from senior management about mixed racial marriage or the Mason-Dixon Line were commonplace.

18. There was no training manual at UDA, and on occasion Plaintiffs Love and Mims received disciplinary reprimands for violating rules that were unwritten and made up after the fact by UDA senior management. For example, Plaintiff Mims was issued written discipline for following the direction of the same senior management regarding the contents of an employee disciplinary notice.

19. Plaintiff Kilgore learned during her employment that UDA had mistakenly set up her billing designation as a "general dentist" rather than as a much higher paid "oral surgeon". Kilgore had meetings with UDA management to resolve this issue, and almost immediately was accused of falsely inflating her work hours and skipping out of the office early on many occasions. This retaliatory conduct by Jaworski and Bingham became the standard treatment for any African-Americans who stood up to UDA's unprofessional behavior and competency in the area of dentistry/oral surgery.

4

20. At various times, UDA, through its management personnel, have specifically denied Plaintiff Kilgore (and other African-American dental professionals) the proper number of dental assistants that are required by medical standards for sedation of patients. Sedation is a precursor to the performance of any of the oral surgeries by Plaintiffs on behalf of UDA. This staffing failure has cost Plaintiff Kilgore tens of thousands of dollars and has been purposely done in an effort to get Plaintiffs to resign from her employment. White doctors at UDA are given adequate staffing, but, due to her race, Plaintiff Kilgore is not.

21. Plaintiff Kilgore has complained many times to UDA management about their failure to appropriately staff her procedures, and they continue to refuse to find or send competent, qualified candidates and existing dental assistants to support Plaintiff Kilgore's surgery practice. UDA has taken no corrective action to address the staffing shortages that have crippled Plaintiff Kilgore's ability to provide surgical services.

22. Rather than solve the intentionally created staffing shortage they have created for Plaintiffs, UDA management personnel have also openly recruited other support personnel, including practice managers, to gather "dirt" on Plaintiff Kilgore that could be used to terminate her employment. UDA management has even gone as far as telling employees who were being trained in an orientation session before going to work for Plaintiff Kilgore at University 2 that Plaintiff was very difficult to work for and was a "bitch." To illustrate further the issue of targeting Plaintiffs, Plaintiff Mims was told by UDA management to create false narratives about Plaintiff Kilgore, which he refused to do. Plaintiff Mims was then forced to resign due to the hostile work environment deliberately created by UDA's senior management.

5

23. Another employee was asked to sign a false statement about an action allegedly taken by Kilgore (throwing an object at a subordinate employee), but the employee refused to lie on behalf of UDA management.

24. Plaintiff Mims was hired to be the Practice Manager for Plaintiff Kilgore at University 2. Mims was informed by Jaworski or Bingham that Plaintiff Kilgore was untrustworthy, mean and impossible to work for. Mims was tasked by Jaworski/Bingham to conduct a meeting with Kilgore and her staff that would be used to get rid of Kilgore. Mims objected to the false narrative being created, and Jaworski even held a one-hour dress rehearsal about the topics to cover at this meeting with Plaintiff Kilgore. When Mims requested that Jaworski attend the meeting, Jaworski decided that Kilgore did not need to attend the meeting after all.

25. There is no functioning UDA HR Department that operated in North Carolina that could competently investigate Plaintiffs' various complaints about the race-based behavior they have been subjected to. Instead, Defendants Jaworski has bragged to other employees that she and the HR person (Eva Regan) are super close friends who have known each other for a dozen or more years. Plaintiffs' complaints of race discrimination have never been seriously addressed due to the failure of UDA to hire a competent outside investigator/consultant and due to the conflict between HR and Plaintiffs' race issues created by the close relationship between and among Jaworski, Bingham and Regan. The UDA HR department is not trusted by the minority employees in western North Carolina due to the department's blatant bias in favor of Jaworski/Bingham, and it is widely known in the company that Regan highly favors Jaworski and Bingham. Confidential employee complaints involving Jaworski and/or Bingham are immediately shared by HR

with Jaworski and Bingham, which adds to the dysfunction at UDA and contributes to the racially hostile work environment.

26. At all material times, the Defendants did not take discriminatory actions towards non-African-Americans.

27. At all material times, the Defendants did not engage in degrading and discriminatory conduct in the workplace with respect to non-African-Americans.

28. Throughout Plaintiff's employment, non-Black employees were treated differently than Black employees, including in the terms and conditions of employment and promotions. For example, Plaintiff Mims discovered that one of his African-American clerical employees was underpaid. Mims attempted multiple times to fix her pay discrepancy and was subjected instead to the wrath of Jaworski and Bingham. It took many months to resolve a simple pay discrepancy due to the fact that the manager who discovered the pay discrepancy and the employee being paid less than she should were both African-American. Bingham's attitude towards Mims throughout the pay ordeal was demeaning and threatening.

29. Another example of race-based behavior by Jaworski had to do with a rumor Jaworski started about Dr. Lesansky having a sexual affair with a subordinate employee. Jaworski started and promulgated this vile rumor but tried to blame the origins of it on Dr. Crowder, an African American dentist who worked for UDA.

30. UDA knows or has reason to know that Jaworski and Bingham have continuously engaged in a practice of racial discrimination against Plaintiffs in relation to their employment at UDA.

31. UDA refused to investigate nor take any remedial action, despite multiple complaints by Plaintiffs, because of Plaintiffs' race.

32. UDA has chosen to retain Jaworski and Bingham as employees and they continue to target Plaintiffs on account of their race. Any disagreement with instructions or conversations with Jaworski or Bingham by any of the Plaintiffs caused Jaworski to turn on the Plaintiff and engendered untruths about conversations manufactured by Jaworski and/or Bingham.

33. At all material times, Caucasian employees and non-African-Americans were not subjected to such discriminatory conduct by the Defendants.

34. Defendants discriminated against Plaintiffs and created a hostile work environment, an atmosphere of retaliation, denied promotions and deprived Plaintiffs of substantial income on the basis of Plaintiffs' race, and color, and because Plaintiffs complained of and opposed Defendants' unlawful conduct. Plaintiff Love was denied promotions over a period of time based on her race, with Defendants instead promoting lesser-qualified white employees to the positions sought by Plaintiff Love. Love was forced to train many of the employees promoted over her, which shows the demeaning conduct of UDA senior management to pass over the deserving employee (Love) in favor of white employees who knew far less about the management roles at UDA than Love did. One new employee Love was training even remarked that Love should have the position for which the new employee was hired, as she herself had no experience in healthcare or dentistry. When Love was finally promoted, she was promoted to an assistant manager role and not a management role. Plaintiff Love believes the assistant manager job was a newly created designation that applied only to her and paid less than the full manager role

8

for which she applied and was qualified. After an extended period of time, Plaintiff Love was finally promoted to a Practice Manager but her working conditions are extremely hostile due to the actions of Jaworski and Bingham.

35. The above are just some examples of the unlawful discrimination and retaliation to which the Defendants have subjected Plaintiffs to.

36. The Defendants discriminated against Plaintiffs as it related to the terms and conditions of employment, because of Plaintiffs' race.

37. The Defendants retaliated against Plaintiffs because they complained, reported, or otherwise opposed Defendants' illegal conduct. The most recent example of this involved a complaint made by Plaintiff Love to Dr. Lesansky. Lesansky assured Love that their conversation would be confidential. Plaintiff Love has since learned that everything she shared with Dr. Lensansky about the hostile work environment she and others have endured was immediately shared with Bingham. Such cavalier treatment of delicate matters by Lesansky and Bingham contributes to a work atmosphere of discrimination, retaliation, and hostility.

38. The Defendants subjected Plaintiffs to a hostile work environment based on Plaintiffs' race.

39. Plaintiffs claim a continuous practice of discrimination and make all claims herein under the continuing violation doctrine.

40. As a result of Defendants' unlawful and discriminatory actions, Plaintiffs have endured humiliation resulting in severe emotional distress, severe depression, extreme anxiety, and accompanying physical ailments.

41. As a result of Defendants' unlawful and discriminatory actions, Plaintiffs have endured financial hardships and irreparable damage to their professional reputations.

42. As a result of the acts and conduct complained of herein, Plaintiffs have suffered and will continue to suffer the loss of income, the loss of salary, bonuses, benefits and other compensation, which their employment at UDA includes. Plaintiffs have also suffered pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. Plaintiffs further claim aggravation, activation, and/or exacerbation of any preexisting condition.

43. As Defendants actions were malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiffs demand punitive damages against Defendants.

## **COUNT I: DISCRIMINATION UNDER 42 U.S. CODE § 1981**

44. Plaintiffs incorporate by reference each and every allegation made in the above paragraphs 1 through 43, as though fully set forth herein.

45. 42 U.S.C § 1981 - Equal rights under the law states provides:

    (a) All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

(b) For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

(c) The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law.

46. At all times material hereto, Defendants is an "employer" within the meaning of 42 U.S.C. §1981.

47. At all times material hereto, each of the Plaintiffs was an "employee" of the Defendants within the meaning of 42 U.S.C. §1981.

48. At all relevant times, Plaintiffs were and continue to be qualified for the positions currently held with or formerly occupied at Defendants.

49. At all times material hereto, Plaintiffs' job performance was or is satisfactory or above satisfactory.

50. Defendants engaged in unlawful employment practices that violated 42 U.S.C §1981, by discriminating against Plaintiffs on account of Plaintiffs being of the African American race.

51. Defendants violated Section 1981 by intentionally discriminating against Plaintiffs in a serious tangible way with respect to compensation, terms, conditions, or privileges of their employment.

52. Plaintiffs' race characteristics were a determinative or motivating factor in Defendants' employment actions.

53. The Defendants cannot show any legitimate non-discriminatory reason for statements made to and actions taken against Plaintiffs; its employment practices and any reasons

11

proffered by the Defendants for their actions against Plaintiffs are pretextual and can readily be disbelieved.

54. Plaintiffs' protected status played a motivating part in the Defendants' decisions even if other factors may also have motivated Defendants actions against Plaintiffs.

55. Defendants' Agent/Managers Jaworski and Bingham's harassment and highly offensive conduct as to Plaintiffs are on account of Plaintiffs' race adversely affected the terms, conditions, and privileges of Plaintiffs' employment.

56. During the course of their employment with the Defendants, Plaintiffs were continually and repeatedly subjected to severe and pervasive racial discrimination by the Defendants' Agent/Managers Jaworski and Bingham due to their racial animus towards Plaintiffs, as is set forth in more detail above.

57. Plaintiffs made several complaints about the severe and pervasive discrimination to UDA, who failed to take any remedial measure or otherwise ratified all relevant discriminatory conduct.

58. Defendants' conduct was adequately severe and pervasive so as to alter the work environment and create an abusive and hostile work environment for Plaintiffs.

59. Defendants acted upon a continuing course of conduct.

60. Defendants constantly enforced a purposefully discriminatory pattern and practice of depriving Plaintiffs, as African-American individuals, of the equal rights afforded to them, in violation of 42 U.S.C. §1981.

61. Defendants violated Section 1981, and Plaintiffs suffered numerous damages as a result.

12

62. Plaintiffs make their claim against Defendants under all of the applicable paragraphs of 42 U.S. Code § 1981. Plaintiff Mims was subjected to intolerable working conditions such that a reasonable person in his position would have been compelled to resign.

63. As a result of Defendants' violation of Section 1981, Plaintiffs have been denied the enjoyment of all benefits, privileges, terms, and conditions of Plaintiffs' contractual relationship, which provided substantial compensation and benefits to the Plaintiffs.

64. As alleged above, Defendants acted with malice or reckless indifference to the rights of the Plaintiffs, thereby entitling Plaintiffs to an award of punitive damages.

65. As a result of Defendants' violations of Section 1981, Plaintiffs have suffered damages, including, but not limited to: past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

**WHEREFORE**, Plaintiffs demand judgment against Defendants and pray for the following relief: (1) actual damages; (2) compensatory damages in an amount consistent with Section 1981; (3) reasonable attorneys' fees in accordance with Section 1981; (4) litigation costs in accordance with Section 1981; (5) pre- and post-judgment interest as further allowed by law; (6) an adjudication and declaration that Defendants' conduct as set forth herein is in violation of Section 1981; (7) punitive damages in accordance with Section 1981; (8) back pay and front pay in accordance with Section 1981; and (9) all additional general and equitable relief to which Plaintiffs are entitled.

## COUNT II: § 1981 HOSTILE WORK ENVIRONMENT

66. Plaintiffs incorporate by reference each and every allegation made in the above paragraphs 1 through 65, as though fully set forth herein.

67. Defendants subjected Plaintiffs to harassment motivated by Plaintiffs' racial characteristics as African-Americans.

68. Defendants' conduct was not welcomed by Plaintiffs.

69. Defendants' conduct was so severe and/or pervasive that reasonable people in Plaintiffs' positions would find the work environment to be hostile or abusive.

70. As a result of Defendants' conduct, Plaintiffs genuinely believe their work environment was hostile or abusive.

71. As a result of the hostile work environment, Plaintiffs suffered a "tangible employment action" defined as a significant change in employment status, not being promoted, reassignment with significantly different responsibilities, and/or a decision causing a significant changes om compensation.

72. Defendants failed to exercise reasonable care to prevent racial harassment in the workplace by failing to establish an explicit policy against harassment in the workplace on the basis of race, failing to fully communicate the policy to its employees, and/ or failing to provide a reasonable way for Plaintiffs to make a claim of harassment to higher management, and failing to take reasonable steps to promptly correct the harassing behavior raised by Plaintiffs.

73. Defendants acted upon a continuing course of conduct.

74. As a result of Defendants' violations of Section 1981, Plaintiffs have suffered damages, including, but not limited to: past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress,

reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

**WHEREFORE**, Plaintiffs demand judgment against Defendants and pray for the following relief: (1) actual damages; (2) compensatory damages in an amount consistent with Section 1981; (3) reasonable attorneys' fees in accordance with Section 1981; (4) litigation costs in accordance with Section 1981; (5) pre- and post-judgment interest as further allowed by law; (6) an adjudication and declaration that Defendants' conduct as set forth herein is in violation of Section 1981; (7) punitive damages in accordance with Section 1981; (8) back pay and front pay in accordance with Section 1981; and (9) all additional general and equitable relief to which Plaintiffs are entitled.

## **Count III: Retaliation under 42 U.S.C. Section 1981**

75. Plaintiffs incorporate by reference each and every allegation made in the above paragraphs 1 through 74, as though fully set forth herein.

76. Based on the unlawful retaliatory conduct by Defendants alleged above, Plaintiffs have and continue to suffer monetary damages, including but not limited to back pay, lost income and the loss of benefits, and noneconomic damages including emotional distress, humiliation, embarrassment and mental anguish.

77. Defendants' senior management team are officially employed by Defendants and have acted willfully with malice or reckless indifference to Plaintiffs' federally protected rights, and Plaintiffs are therefore entitled to recover punitive damages.

**JURY DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs hereby demand a trial by jury on all issues raised by this Complaint.

Respectfully submitted on this __15th__ day of August, 2022,

/s/ *Edward H. Nicholson, Jr.*
NC State Bar No. 36123
Nicholson Law Firm, P.A.
P.O. Box 1832
Salisbury, NC 28145
nicholsonshumaker@att.net
(704) 223-2406

| | |
|---|---|
| James E. Voyles | John F. Meyers |
| Georgia Bar No. 729016 | Georgia Bar No. 503692 |
| The Voyles Law Firm, P.C. | JMeyers Group, LLC |
| 1755 The Exchange SE, #339 | 1755 The Exchange SE, #339 |
| Atlanta, GA 30339 | Atlanta, GA 30339 |
| jvoyles@voyleslaw.com | john@jmeyersgroup.com |
| (404) 550-9673 | (404) 597-1275 |
| *pro hac vice application to be filed* | *pro hac vice application to be filed* |